**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS A. JOAS, M.D.,<br><br>          Plaintiff,<br>vs.<br><br>RELIANCE STANDARD LIFE INSURANCE COMPANY,<br><br>          Defendant. | CASE NO. 03CV850 WQH (AJB)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

HAYES, Judge:

  Pending before the Court are cross-motions for summary judgment following remand from the Court of Appeal for the Ninth Circuit. (Docs. # 57, 59). On September 24, 2007, the Court heard oral argument on these matters. (Doc. # 67).

**PROCEDURAL BACKGROUND**

  On or about April 4, 2003, Plaintiff Thomas A. Joas, M.D. filed the Complaint in this matter against Defendant Reliance Standard Life Insurance Company in the California State Superior Court in San Diego. (Doc. # 1). Plaintiff alleged that Defendant improperly calculated Plaintiff's disability benefits in violation of various state laws. (Doc. # 1). On May 19, 2003, Defendant Reliance Standard Life Insurance Company removed the case to this Court on the grounds that the dispute was governed by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001, et seq., and presented a federal question. (Doc. # 1). Plaintiff did not challenge the removal.

On March 25, 2004, the parties filed cross-motions for summary judgment. (Docs. # 16-17, 22-23). Thereafter, on April 29, 2004, the Court granted Defendant's motion for summary judgment and denied Plaintiff's motion for summary judgment. (Doc. # 34). On May 21, 2004, Plaintiff filed a notice of appeal. (Doc. # 36).

On January 3, 2007, the Court of Appeal for the Ninth Circuit vacated this Court's Order of April 29, 2004, and remanded the case back to this Court for reconsideration in light of *Abatie v. Alta Health & Life Insurance Co.*, 458 F.3d 955 (9th Cir. 2006) (en banc), an intervening Circuit decision which altered the standard of review for a district court in ERISA cases. (Doc. # 69). On July 25, 2007, the parties filed the pending cross-motions for summary judgment. (Docs. # 57, 59).

## FACTS

Plaintiff is a medical doctor licensed to practice medicine in the State of California, with a specialty in anesthesiology. *Declaration of Thomas A. Joas (Joas Decl.) (Doc. # 61)*, ¶ 2. On July 1, 1971, Plaintiff became a shareholder and employee of Anesthesia Service Medical Group, Inc. (ASMG), a California corporation. *Joas Decl.*, ¶ 3. As an employee of ASMG, Plaintiff received monthly compensation which fluctuated depending on (1) "the amount billed and collected by ASMG for the professional service that [Plaintiff] rendered on ASMG's behalf," and (2) the administrative fee charged by ASMG. *Joas Decl.*, ¶¶ 4, 6. Between November, 1999, and November, 2001, Plaintiff received the following monthly compensation:

| Month | Amount |
| --- | --- |
| 11/99 | $ 15,126.17 |
| 12/99 | $ 17,116.13 |
| 1/00 | $ 21,714.77 |
| 2/00 | $ 12,203.08 |
| 3/00 | $  9,640.12 |
| 4/00 | $ 21,917.05 |
| 5/00 | $ 14,039.76 |
| 6/00 | $  8,851.30 |
| 7/00 | $ 20,037.03 |
| 8/00 | $ 21,575.97 |
| 9/00 | $ 22,799.05 |
| 10/00 | $  8,617.60 |
| 11/00 | $ 15,109.80 |
| 12/00 | $ 20,204.94 |
| 1/01 | $  8,063.91 |
| 2/01 | $  4,915.79 |
| 3/01 | $ 12,950.39 |
| 4/01 | $ 12,749.14 |
| 5/01 | $  7,266.23 |

|   |   |
|---|---|
| 6/01  | $ 12,635.32 |
| 7/01  | $ 11,009.22 |
| 8/01  | $ 18,715.38 |
| 9/01  | $ 19,492.20 |
| 10/01 | $ 10,509.75 |
| 11/01 | $  8,578.41 |

*Joas Decl.*, ¶¶ 6, 10

ASMG contracted with Defendant Reliance Standard Insurance Company to provide disability insurance benefits to ASMG shareholders and employees. *Joas Decl.*, ¶ 8; *Declaration of Glen Buberl (Buberl Decl.) (Doc. # 19)*, ¶¶ 8-11. ASMG employees were required to participate in "the group longterm disability insurance program," and ASMG paid Defendant premiums for long term disability insurance for the years 2000 and 2001. *Buberl Decl.*, ¶ 10. Each ASMG employee and shareholder is an anesthesiologist. *Buberl Decl.*, ¶ 5.

The insurance policy entered into between ASMG and Defendant provided monthly disability benefits to ASMG employees if, among other things, one of the employees "is Totally Disabled as a result of a Sickness or Injury covered by this Policy." *Declaration of David B. Sharp (Sharp Decl.) (Doc. #63)*, Ex. 1 at 18. To determine the amount of monthly benefits a totally disabled person would be entitled to under the policy, the policy provided in relevant part:

**BENEFIT AMOUNT:** To figure the benefit amount payable:

(1) multiply an Insured's Covered Monthly Earnings by the benefit percentage(s), as shown on the Schedule of Benefits page;

(2) take the lesser of the amount:

   (a) of step (1) above; or

   (b) the Maximum Monthly Benefit, as shown on the Schedule of Benefits page; and

(3) subtract Other Income Benefits, as shown below, from step (2) above.

*Sharp Decl.*, Ex. 1 at 18. The policy defined "Covered Monthly Earnings" as:

"Covered Monthly Earnings" means the insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings. However, for a salesperson, "Covered Monthly Earnings" will include commissions received from you averaged over the lesser of:

(1) the number of months worked; or
(2) the 24 months just prior to the date Total Disability began.

> If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings. If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basis annual salary by 12.

*Sharp Decl.*, Ex.1 at 8. It is undisputed that Defendant was responsible for paying benefits under the insurance policy. *Sharp Decl.*, Ex. 7 at 14. It is further undisputed that the policy granted Defendant "the discretionary authority to interpret the Plan and the insurance policy and to determine eligibility for benefits." *Sharp Decl.*, Ex. 7 at 14.

On November 30, 2001, Plaintiff suffered a major stroke and became totally disabled. *Joas Decl.*, ¶ 5 & Ex. B. Plaintiff filed a claim under the disability insurance policy entered into between ASMG and Defendant, and on May 9, 2002, Defendant approved the claim. *Joas Decl.*, ¶¶ 8-9 & Ex. B. In its letter to Plaintiff approving Plaintiff's insurance claim, Defendant outlined its benefits determination, and noted "[y]our net monthly benefit is $1,523.72 payable in accordance with the terms of the group policy." *Joas Decl.*, Ex. B. In calculating Plaintiff's net monthly benefit, Defendant concluded that Plaintiff was a salaried employee, and thus Plaintiff's net monthly benefit was calculated as 60% of Plaintiff's salary the month before he was disabled, less retirement pension and California state disability payments. *Joas Decl.*, Ex. B. In calculating Plaintiff's benefits, Defendant used Plaintiff's November, 2001, compensation of $8,578.41, as follows:

| | |
|---|---|
| Monthly Eligible Salary @ 60% [60% of $8,578.41] | $5,147.05 |
| Less Retirement Pension | $1,500.00 |
| Less CA State Disability | $2,123.33 |
| Monthly Benefit | $1,523.72 |

*See Joas Decl.*, Ex. B.

Plaintiff immediately disagreed with Defendant's benefits calculation. On May 21, 2002, Plaintiff wrote Defendant to outline Plaintiff's concerns and to indicate that Plaintiff did not accept Defendant's benefits determination. *Joas Decl.*, ¶ 10 & Ex. C. In the letter, Plaintiff noted that his compensation fluctuated month-to-month, and indicated that he should be classified as a salesperson as opposed to a salaried employee. *Joas Decl.*, Ex. C. As a "salesperson" under the policy, Plaintiff would have received 60% of his average monthly compensation over the previous twenty-four months, less retirement and California state disability deductions, which would have resulted in monthly benefit payments of approximately $5,058.17, or $3,534.45 more per/month than Defendant outlined

in its letter of May 9, 2002. *Joas Decl.*, ¶ 14.  Plaintiff's letter stated that, "I do not expect to be penalized by the fact that my stroke happened to occur at the end of a period for which I had taken a lot of time off to attend professional meetings." *Joas Decl.*, Ex. C.

Defendant did not immediately respond to Plaintiff's letter of May 21, 2002, and on June 17, 2002, Plaintiff sent a follow-up letter to Defendant. *Joas Decl.*, Ex. D.  Plaintiff wrote that:

> I now find that it has been six and a half months since my stroke and I still do not have a final determination as to the payments to which I am entitled under my disability insurance.  I wrote to you on May 21, 2002 and raised a fairly straightforward point about your interpretation of the meaning of the language in my disability policy and now, over three weeks later, I have received no response to my questions.  Since the point that I raised is not complicated, it would seem to me that I should be able to obtain a prompt response without having to enlist the services of an attorney.

*Joas Decl.*, Ex. D.  In a letter dated June 25, 2002, Defendant responded to Plaintiff's letters, and, after citing the language of the policy, concluded that,

> We do understand your earnings fluctuate from month to month based upon the work you perform and the fees collected; however, our position is an Anesthesiologist is not a "salesperson". We must administer your benefits according to the provisions of your group policy.  It is not our intent to penalize you; we would have used the same pay period had your earnings been higher.

*Joas Decl.*, Ex. E.

After receiving Defendant's letter of June 25, 2002, Plaintiff retained attorney David B. Sharp to assist with recovering benefits from Defendant. *Joas Decl.*, ¶ 13.  On September 12, 2002, Sharp wrote to Defendant seeking "copies of all documents and records which were relevant to determining [Dr. Joas's] benefit payment." *Declaration of David B. Sharp (Sharp Decl.) (Doc. #63)*, Ex. 4.  Sharp also sought, "copies of internal rules, guidelines, protocol and other criteria relied upon in making Reliance's determination," as well as "examples of similarly situated persons where Reliance used the same benefit analysis as for Dr. Joas, and examples of similarly situated persons for which Reliance used a different method of determining benefits than you did for Dr. Joas." *Sharp Decl.*, Ex. 4.

Reliance did not immediately answer Sharp's letter of June 25, 2002, resulting in follow-up letters dated October 4, 2002, and October 22, 2002, in which Sharp once again requested copies of all relevant documentation. *Sharp Decl.*, Exs. 5-6.  Thereafter, in a letter dated October 21, 2002, Defendant responded to Sharp's request, noting, "We apologize for our delay in responding . . . . As per your request, enclosed are copies of all relevant documents and records pertaining to Dr. Joas'

1 benefit payment." *Sharp Decl.*, Ex. 7. Defendant's letter of October 21, 2002, did not address Sharp's
2 request for examples of similarly situated persons, and did not include "work papers or documents
3 generated or created by . . . any [claim] examiner," or Defendant's "file." *Sharp Decl.*, Exs. 7-8.  On
4 October 25, 2002, and December 12, 2002, Sharp authored letters to Defendant again seeking the
5 previously requested information and documentation. *Sharp Decl.*, Exs. 8, 11, 13. On November 12,
6 2002, Sharp filed an official request for review of Defendant's benefits decision. *Sharp Decl.*, Ex. 10.

7 Defendant did not address Sharp's requests for examples of similarly situated persons or "work
8 papers" created by any examiner until December 26, 2002, and then simply noted that, "[p]lease be
9 advised that we have given you all of the information you have requested. . . . Unfortunately, we
10 cannot disclose to you data referencing other claimants." *Sharp Decl.*, Ex 12. Sharp's later requests
11 for specific examples and other information went unanswered. *Sharp Decl.*, Exs. 13-15.

12 On July 25, 2007, and in connection with the cross-motions for summary judgment, Defendant
13 filed the administrative record in this case. (Doc. # 58). The administrative record filed on July 25,
14 2007, included substantially more documents than were provided to Plaintiff and the Court in 2004
15 when the Court ruled on the parties' previous motions for summary judgment. *See* (Doc. # 24); *Sharp*
16 *Decl.*, Ex. 7.

17 **STANDARDS OF REVIEW**

18 **I. Summary Judgment**

19 Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure where
20 the moving party demonstrates the absence of a genuine issues of material fact and entitlement to
21 judgment as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,
22 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome
23 of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a material fact
24 is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving
25 party." *Id.*

26 In ruling on a motion for summary judgment, "[t]he district court may limit its review to the
27 documents submitted for purposes of summary judgment and those parts of the record specifically
28 referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir.

2001). The court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

## II. ERISA Benefits Decision

The parties seek review of Defendant's decision to deny certain benefits to Plaintiff under the insurance policy. Under the facts of this case, it is undisputed that Defendant both funded the insurance policy and had discretion to interpret the policy's terms and decide eligibility for benefits. The parties agree that Defendant operated under a structural conflict of interest.

### A. The *Abatie* Standard Generally

Where an ERISA-covered plan confers discretionary authority to interpret the plan upon a plan administrator operating under a conflict of interest, a district court reviewing a benefits decision made pursuant to the plan applies the standard of review articulated in *Abatie v. Alta Health & Life Insurance*, 458 F.3d 955 (9th Cir. 2006) (en banc). In *Abatie*, the Court of Appeal for the Ninth Circuit held that, where a plan confers discretion upon a conflicted plan administrator to interpret the plan, a district court reviews the decision of the conflicted plan administrator for an abuse of discretion, "tempered by skepticism commensurate with the plan administrator's conflict of interest." *Abatie*, 458 F.3d at 959. Specifically, the Court of Appeal for the Ninth Circuit held that:

> [a] district court, when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily (that is, may cause the court to find an abuse of discretion more readily) than a minor, technical conflict might. But in any given case, all the facts and circumstances must be considered . . . . A straightforward abuse of discretion analysis allows a court to tailor its review to all the circumstances before it.

*Abatie*, 458 F.3d at 968. Though the Court of Appeal noted that the standard articulated in *Abatie* was "indefinite," the Court added that the district court's task was akin to assessing a witness's credibility in a bench trial–"[w]hat the district court is doing in an ERISA benefits denial case is making something akin to a credibility determination about the insurance company's or plan administrator's reason for denying coverage under a particular set of medical and other records." *Abatie*, 458 F.3d at 969. The Court added that,

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides

>inconsistent reasons for denial, *Lang*, 125 F.3d at 799; fails adequately to investigate a claim or ask the plaintiff for necessary evidence, *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463-64 (9th Cir. 1997); fails to credit a claimant's reliable evidence, *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); or has repeatedly denied benefits to deserving participants by interpreting the plan terms incorrectly or by making decisions against the weight of evidence in the record.

*Abatie*, 458 F.3d at 968-69. In determining "the nature, extent, and effect on the decision-making process of any conflict of interest," the district court may consider evidence outside the administrative record. *Abatie*, 458 F.3d at 970.

### B. The Standard of Review Under the Facts of This Case

Defendant contends that the structural conflict of interest is a technical conflict which should not substantially alter the abuse of discretion standard of review. Defendant contends that the Court should employ an abuse of discretion standard of review tempered with only a low level of skepticism under the facts of this case. Plaintiff contends that the Court should review Defendant's benefits decision either de novo or for an abuse of discretion tempered with a substantial and high degree of skepticism. Plaintiff contends that the facts of this case warrant a high degree of skepticism toward Defendant's interpretation because Defendant (1) failed to comply with ERISA's administrative review requirements, (2) has interpreted similar policy language inconsistently in other cases, (3) failed to produce relevant information which Plaintiff requested in order to challenge Defendant's benefits determination, and (4) produced an administrative record in July, 2007, which included documents which had not been lodged with the Court or provided to Plaintiff prior to the originally filed cross-motions for summary judgment.

Where an ERISA plan denies an insured benefits, ERISA requires the plan to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination . . . under which there will be a *full and fair review* of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1) (emphasis added). The claims procedures will not be deemed to provide a claimant with a reasonable opportunity for a "full and fair review" of a claim and adverse benefit decision unless, among other things, the claims procedures,

>(iii) Provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits. Whether a document, record, or other information is relevant to a claim for benefits shall be determined by reference to paragraph (m)(8) of this section;

> (iv) Provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

29 C.F.R. § 2560-503-1(h)(2)(iii)-(iv).  A document, record, or other information is "relevant" to a claimant's claim for benefits if such document, record, or other information,

> (i) Was relied upon in making the benefit determination, (ii) Was submitted, considered, or generated in the course of making the benefit determination . . . , (iii) Demonstrates compliance with the administrative processes and safe-guards required pursuant to paragraph (b)(5) of this section in making the benefits determination, or (iv) . . . constitutes a statement of policy or guidance with respect to the plan . . . .

29 C.F.R. § 2560.503-1(m)(8).  In order for the claims procedures to be reasonable, 29 C.F.R. § 2560.503-1(b)(5) requires that the claims procedures must, "contain administrative processes and safeguards designed to insure and to verify that benefit claim determinations are made in accordance with governing plan documents and that, where appropriate, the plan provisions have been applied consistently with respect to similarly situated claimants."

It is undisputed in this case that Defendant did not provide Plaintiff with examples of how Defendant interpreted the terms of the policy with respect to similar situated persons seeking benefits, or examples of persons whom Defendant previously deemed to be either salespersons or salaried employees under the policy, even though that information was requested by Plaintiff on numerous occasions. *Sharp Decl.*, ¶¶ 4-6, 8, 11, 13. Defendant failed to address Plaintiff's request for examples several times, before informing Plaintiff that "[u]nfortunately, we cannot disclose to you data referencing other claimants." *Sharp Decl.*, Ex 12.  Defendant did not offer or provide Plaintiff examples of similar situated persons which redacted potentially personal or confidential information, and there is no evidence before the Court which would permit an inference that Defendant sought to or considered its duty to interpret the policy consistently when it interpreted the policy with respect to Plaintiff's claim.  *See* 29 C.F.R. §§ 2560.503-1(b)(5), (m)(8).  The Court concludes that Defendant's failure to provide Plaintiff with requested information and to consider whether it was interpreting the insurance policy consistently during Plaintiff's benefits determination requires this Court to temper the abuse of discretion standard of review with a fair amount of skepticism. *See Abatie*, 458 F.3d at 972.

In addition to failing to follow ERISA review requirements in full, the Court notes that

1  Defendant advocated a different interpretation of similar "covered monthly earnings" language in a
2  case before the Court of Appeal for the Fifth Circuit, and the Court concludes that this fact also
3  requires the Court to temper with skepticism the abuse of discretion standard under the facts of this
4  case. In *Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 504 (5th Cir. 2005), Defendant
5  took the position that salary was fixed compensation paid regularly, as opposed to Defendant's
6  position in this case that salary is a fixed method of calculating compensation. Defendant argued in
7  *Keszenheimer* that an income which fluctuates month-to-month does not plainly fit the definition of
8  monthly salary, which is contrary to the position Defendant advocates in this case. *Id*. at 507-09.

9  After reviewing *Abatie* and the facts before the Court on summary judgment, the Court
10 concludes that it must review Defendant's decision to deny Plaintiff benefits under the policy for an
11 abuse of discretion tempered with an elevated degree of skepticism and scrutiny for the reasons stated
12 above. *See, e.g., Archuleta v. Reliance Standard Life Ins. Co.*, 504 F. Supp. 2d 876, 884-85 (C.D. Cal.
13 2007). As established by other courts, "[a]n ERISA administrator abuses its discretion only if it (1)
14 renders a decision without explanation, (2) construes provisions of the plan in a way that conflicts with
15 the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Wells v. Reliance*
16 *Standard Life Ins. Co.*, CV 06-32-M-DWM-JCL, 2007 U.S. Dist. LEXIS 16885, *11 (D. Mont. Jan.
17 11, 2007) (citing *Boyd v. Bell/Rozell NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir.
18 2005)).

19                                              **DISCUSSION**

20  In authorizing disability benefits for Plaintiff under the policy, Defendant deemed Plaintiff a
21 salaried employee, and calculated Plaintiff's monthly benefit using Plaintiff's November, 2001,
22 compensation of $8,578.41. Defendant concluded that Plaintiff was not a "salesperson" as that term
23 is used in the policy's definition of "covered monthly earnings" because Plaintiff's job description was
24 unlike that of a salesperson, and in Defendant's opinion, "an Anesthesiologist [is] not a salesperson."
25 *See Sharp Decl.*, Ex 14. Plaintiff immediately objected to Defendant's benefit calculation, and sought
26 administrative review of the decision with the help of attorney Sharp. Thereafter, Defendant denied
27 Plaintiff's administrative appeal on the grounds that Plaintiff could not be considered a salesperson
28 under the policy. The question before the Court is whether Defendant abused its discretion by

classifying Plaintiff as a salaried employee under the policy and denying additional benefits which Plaintiff requested.

## I. Standard for Reviewing ERISA Policy Language

In order to determine whether Defendant abused its discretion in classifying Plaintiff as a salaried employee and denying benefits, the Court must examine and interpret the "plain language" of the insurance policy using developed principles of federal common law. *See Canseco v. Construction Laborers Pension Trust for So. Calif.*, 93 F.3d 600, 606 (9th Cir. 1996); *Padfield v. AIG Life Ins. Co.*, 290 F.3d 1121, 1125 (9th Cir. 2002). Under the federal common law of ERISA, a district court "interpret[s] terms in ERISA insurance policies in an ordinary and popular sense as would a person of average intelligence and experience." *Padfield*, 290 F.3d at 1125. It is established that "trustees abuse their discretion if they . . . construe provisions of [a] plan in a way that clearly conflicts with the plain language of the plan." *Canseco*, 93 F.3d at 606; *see also Johnson v. The Trustees of the Western Conf. of Teamsters*, 879 F.2d 651, 654 (9th Cir. 1989); *Neathery v. Chevron Texaco Corp. Group Accident Policy*, Case No. 05CV1883 JM (CAB), 2007 U.S. Dist. LEXIS 55351, *23 (S.D. Cal. July 31, 2007). Where an ERISA plan administrator is granted discretion to interpret insurance policy language and a Plaintiff challenges the administrator's interpretation, the question the Court must ask is not "whose interpretation of the plan documents is most persuasive, but whether the [plan administrator's] interpretation is unreasonable." *Canseco*, 93 F.3d at 606 (citation omitted).

## II. Whether Defendant Abused Its Discretion in Interpreting Policy Language

On May 9, 2002, Defendant determined that Plaintiff was totally disabled. *Sharp Decl.*, Ex. 2. Pursuant to the insurance policy, Plaintiff was entitled to a monthly benefit equal to 60% of his "Covered Monthly Earnings," less other income benefits. *Sharp Decl.*, Ex. 1 at 6, 18. The policy defined "Covered Monthly Earnings" as:

> "Covered Monthly Earnings" means the insured's monthly salary received from you on the day just before the date of Total Disability, prior to any deductions to a 401(k) plan. Covered Monthly Earnings do not include commissions, overtime pay, bonuses or any other special compensation not received as Covered Monthly Earnings. However, for a salesperson, "Covered Monthly Earnings" will include commissions received from you averaged over the lesser of:
>
> (1) the number of months worked; or
> (2) the 24 months just prior to the date Total Disability began.

> If hourly paid employees are insured, the number of hours worked during a regular work week, not to exceed forty (40) hours per week, times 4.333, will be used to determine Covered Monthly Earnings. If an employee is paid on an annual basis, then the Covered Monthly Earnings will be determined by dividing the basis annual salary by 12.

*Sharp Decl.*, Ex.1 at 8.

Defendant contends that Plaintiff's "Covered Monthly Earnings" were his "monthly salary" received on the day just before Plaintiff became totally disabled. Defendant contends that Plaintiff cannot be considered a salesperson because (1) Plaintiff did not sell anything while employed by ASMG, (2) Plaintiff received a monthly salary based on a fixed method of calculation, and (3) Plaintiff never received compensation which could be considered a commission. Plaintiff contends that he did not receive a monthly salary while working for ASMG and that he should have been classified as a salesperson under the plain language of the policy because his compensation severely fluctuated from month to month depending on how much he worked. Plaintiff asserts that his compensation regime was more closely akin to that of a commissioned salesperson than a salaried employee. Plaintiff contends that he is entitled to "Covered Monthly Earnings" equal to the average of all his commissions received over the "24 months just prior to the date Total Disability began." *Sharp Decl.*, Ex. 1 at 8.

The policy specifically provides four alternative definitions of "Covered Monthly Earnings." *Sharp Decl.*, Ex. 1 at 8. If an employee receives a "monthly salary," "Covered Monthly Earnings" means the monthly salary received on the day before total disability. *Sharp Decl.*, Ex. 1 at 8. If an employee is a salesperson, "Covered Monthly Earnings" means the employee's salary plus commissions earned over either the previous 24 months before disability or the total number of months worked. *Sharp Decl.*, Ex. 1 at 8. Finally, if an employee is paid hourly, "Covered Monthly Earnings" means the number of hours worked during an average week times 4.33, and if an employee is paid annually, "Covered Monthly Earnings" means the base annual salary divided by twelve. *Sharp Decl.*, Ex. 1 at 8. Here, the parties agree that Plaintiff was neither paid annually nor hourly, and thus the question before the Court is whether Defendant's decision to classify Plaintiff as a salaried employee as opposed to a salesperson was an unreasonable interpretation of the policy.

In including four alternative definitions for "Covered Monthly Earnings," the policy as a whole

intended to ensure that disability benefits for individual employees fairly stemmed from their average compensation for any given month or week. Where an employee was paid a fixed monthly salary, that salary was used as "Covered Monthly Earnings." However, where an employee did not receive a fixed monthly salary, and instead was paid according to sales made or hours worked, the policy clearly provided that the employee should receive a monthly benefit which took into account and factored in fluctuations in earnings from month-to-month and week-to-week. The policy ensured that a disabled hourly employee would not be without benefits because he was on vacation the week preceding his disability, and a salesperson paid in part based on sales would not be penalized simply because he made no sales the month before becoming totally disabled. Similarly, the policy provided that an employee paid once a year would receive benefits equal to 1/12 of his yearly salary, thus ensuring that the annually paid employee would receive a monthly benefit commensurate to his work and the benefits received by other similarly disabled employees who had been paid at regular intervals. The Court finds that, when interpreted in "an ordinary and popular sense as would a person of average intelligence and experience," the varied definitions of "Covered Monthly Earnings" protected disabled employees benefits by ensuring that those with fluctuating monthly or weekly compensation which have their benefits calculated by looking at greater periods of time than simply the day, week, or month before total disability. *See Padfield*, 290 F.3d at 1125.

"Salary" is commonly defined as a "fixed compensation for services, paid on a regular basis." *Order of April 29, 2004* at 10 (citing Webster's II New College Dictionary 226 (3d ed. 2001)); *see also Keszenheimer v. Reliance Standard Life Ins. Co.*, 402 F.3d 505, 508 (5th Cir. 2005) ("Salary is fixed compensation paid regularly (as by the year, quarter, month, or week) for services."). In this case, Plaintiff's monthly compensation was not fixed, and, in fact, fluctuated significantly depending on a number of factors, some of which were out of Plaintiff's control. *Joas Decl.*, ¶¶ 4, 6. Accordingly, the Court concludes that it is not reasonable to find that Plaintiff received a "monthly salary" as that term is used in the policy. This conclusion comports with that of the Court of Appeal for the Fifth Circuit's conclusion in *Keszenheimer v. Reliance Standard Life Ins. Co.*, where the Court held that,

> Compensation paid ad hoc for working discrete blocks of time–such as an hourly wage–is not typically considered salary. Not unlike an hourly wage earner,

> Keszenheimer's per diem and auto allowance compensation were not fixed, but were paid only for the days that he worked offshore. Given the fluctuation in income day-to-day and month-to-month, this does not fit the plain meaning of 'monthly salary' as contemplated in the policy and as commonly understood.

*Keszenheimer*, 402 F.3d at 508. Indeed, Plaintiff's compensation, paid on a fluctuating basis and based on his work for "discrete blocks of time," is not fixed, and does not fit within the plain meaning of "monthly salary" as used in the insurance policy. *See Sharp Decl.*, Ex.1 at 8.

Defendant contends that Plaintiff received a monthly salary because the method of calculating Plaintiff's compensation was fixed. However, as noted by this Court previously, salary is generally defined as "fixed compensation," which is not the same as "a fixed method of compensation." *Order of April 29, 2004* at 10. Furthermore, as noted in *Keszenheimer*, one of the key characteristics of salary is that it does not fluctuate. *Keszenheimer*, 402 F.3d at 508. Under the facts of this case, it is clear that Plaintiff's monthly compensation fluctuated significantly–Plaintiff earned $22,799.05 in September of 2000, and only $4,915.79 in February of 2001.

After interpreting the pertinent policy language in this case, the Court concludes that Plaintiff did not receive a "monthly salary," as that term is used in the policy. Rather, after reviewing the method in which ASMG compensated Plaintiff, the Court concludes that Plaintiff's monthly compensation regime is akin to commissions earned by salespersons. Plaintiff in effect sold his services to ASMG, allowing ASMG to bill and collect from patients and pay Plaintiff a percentage. *Joas Decl.*, ¶¶ 4-6. Plaintiff only received compensation when he sold and performed medical services. If Plaintiff did not work, Plaintiff was not paid.

Under the policy at issue in this case, a salesperson's covered monthly earnings include "commissions." *Sharp Decl.*, Ex. 1 at 8. "Commission" is commonly defined as "a fee or percentage paid to a salesperson or agent for his or her services." *Order of April 29, 2004 (Doc. # 34)* at 9-10; *see also Keszenheimer*, 402 F.3d at 510. Here, not only did Plaintiff in effect sell his services to ASMG, ASMG paid Plaintiff according to a formula "dependent upon the amount billed and collected by ASMG" for services which Plaintiff rendered on ASMG's behalf. *Joas Decl.*, ¶ 4. Furthermore, before paying Plaintiff, ASMG deducted an administrative fee based upon a "percentage of the amount that ASMG billed and collected," which percentage varied over the years and effected Plaintiff's compensation. *Joas Decl.*, ¶ 4.

After reviewing and interpreting the policy language as a whole in "an ordinary and popular sense as would a person of average intelligence and experience" *see Padfield*, 290 F.3d at 1125, the Court concludes that under the facts of this case, Defendant's decision to classify Plaintiff as a salaried employee "construe[d] provisions of the plan in [a] way that conflict[ed] with the plain language of the plan," and was unreasonable and an abuse of discretion. *Wells*, CV 06-32-M-DWM-JCL, 2007 U.S. Dist. LEXIS 16885, *11 (D. Mont. Jan. 11, 2007) (citing *Boyd v. Bell/Rozell NFL Players Retirement Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005)); *see also Canseco*, 93 F.3d at 606; *Johnson v. The Trustees of the Western Conf. of Teamsters*, 879 F.2d 651, 654 (9th Cir. 1989); *Neathery v. Chevron Texaco Corp. Group Accident Policy*, Case No. 05CV1883 JM (CAB), 2007 U.S. Dist. LEXIS 55351, *23 (S.D. Cal. July 31, 2007).

## CONCLUSION

Under the facts of this case Plaintiff's "Covered Monthly Earnings" were equal to Plaintiff's average compensation received during the "24 months just prior to the date Total Disability began." *Sharp Decl.*, Ex. 1 at 8. After reviewing the declarations and evidence submitted, Plaintiff's average compensation for the 24 months just prior to the date of total disability was $14,469.17. *See Joas Decl.*, ¶ 6. Thus, Plaintiff's monthly benefit should have been calculated as follows:

| | |
|---|---|
| Monthly Eligible Salary @ 60% [60% of $14,469.17] | $8,681.50 |
| Less Retirement Pension | $1,500.00 |
| Less CA State Disability | $2,123.33 |
| Monthly Benefit | $5,058.17 |

*See, e.g., Joas Decl.*, Ex. B. Defendant calculated Plaintiff's monthly benefit using Plaintiff's November, 2001, compensation of $8,578.41, and thus concluded that Plaintiff was entitled to $1,523.72 per/month. The Court concludes that Defendant abused its discretion in calculating Plaintiff's monthly benefit.

/
/
/
/
/
/

1  /

2  /

3   It is hereby ORDERED that:

4   (1) Plaintiff's motion for summary judgment (Doc. # 59) is GRANTED.

5   (2) Defendant's motion for summary judgment (Doc. # 57) is DENIED.

6   Plaintiff shall submit a proposed judgment to the Court within 15 days of this Order.

7 Defendant may file objections to the proposed judgment within 15 days of receipt of Plaintiff's

8 proposed judgment.

9   **IT IS SO ORDERED**.

11 DATED: December 11, 2007

12           *William Q. Hayes*
          **WILLIAM Q. HAYES**

13           United States District Judge